UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KERRY HARRIS, individually and in a derivative capacity on behalf of IHT TECHNOLOGY, INC., | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| CHRIS MACK a/k/a C. MACK; IHT TECHNOLOGY, INC.; SHABAKA, LLC; and ANKOLE SPORKING GOODS, LLC, | § § § § § | Civ. No. SA:11-CV-00622-DAE |
| Defendants, | § § | |
| vs. | § § | |
| K-ARMOR FLORIDA, LLC; ANGEL 7 INDUSTRIES a/k/a A7 INDUSTRIES and A7 HELMET SYSTEMS, LLC, | § § § | |
| Counter-Defendants. | § § | |

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORTS AND RECOMMENDATIONS

Before the Court are the five Reports and Recommendations that

Magistrate Judge Henry J. Bemporad filed on December 5, 2012 (docs. ## 78–82).

The Court must conduct a de novo review of any of the Magistrate Judge's

conclusions to which a party has specifically objected.  See 28 U.S.C. §

636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989). In this case, no objections were filed, so the Court reviews the Reports and Recommendations for clear error.

After careful consideration, and for the reasons given below, this Court **ADOPTS** the Magistrate Judge's Reports and Recommendations. The Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment on Plaintiffs' Causes of Action (doc. # 68); **DENY IN PART, DENY AS MOOT IN PART**, and **GRANT IN PART** Plaintiffs' Motion for Partial Summary Judgment Against Mack (doc. # 69); **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion for Summary Judgment on Counterclaims (doc. # 70); **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment on Plaintiffs' Affirmative Defenses to Defendants' Counterclaims (doc. # 67); and **DENY** Counter-Defendant A7 Helmet Systems, LLC's Motion for Summary Judgment on Counterclaims (doc. # 71).

<u>BACKGROUND</u>

I.       <u>The State Court Litigation</u>

This case arises from a March 2010 state court judgment entered in favor of Defendant Chris Mack ("Mack") against Plaintiff Kerry Harris ("Harris") involving control of IHT Technology, Inc. ("IHT").  IHT designs and markets crash helmets for motorcycling and other motorized power sports.  (Doc. # 67-1 at 13 n. 1).  Harris founded IHT and, prior to the lawsuit, was its majority shareholder.  (Doc. 73-1 at 23.)  The state court judgment held Harris liable for, among other things, breach of contract, breach of fiduciary duty, and fraudulent transfers of IHT assets.  (Doc. # 67-1, Ex. A at 1–5.)  The judgment awarded Mack a money judgment of $468,000.00, interest, and attorneys' fees.  (<u>Id.</u> at 2.)  It also required Harris to assign a controlling interest in IHT to Mack and to assign Harris's intellectual property ("IP") to IHT.  (<u>Id.</u> at 4.)  The IP "includes various trademarks and a patented power system . . . that enables IHT helmets to, among other things, power light-emitting diodes ("LEDs") and communication systems inside crash helmets."  (<u>Id.</u> at 13 n. 1.)

After Harris complied with the judgment, Mack, now the majority shareholder, installed himself at IHT's chief executive officer and removed Harris from all executive positions at IHT.  Then, purportedly in an attempt to partially

satisfy his monetary judgment against IHT, Mack transferred IHT assets to two companies he owned—the physical property to Ankole Sporting Goods, LLC ("Ankole"), and the IP to Shabaka, LLC ("Shabaka").  (Doc. # 36 at 5–6.)

II.          The Federal Litigation

Harris, on behalf of himself and as a minority shareholder of IHT, filed this suit against Mack, IHT, Ankole, and Shabaka.[1]  Harris alleged five causes of action: (1) fraud in reassigning the IP from IHT to Shabaka, (2) shareholder oppression in acting in opposition to the interests of Harris and IHT, (3) breach of fiduciary duty by diverting IHT assets and discontinuing IHT business operations, and (4) conversion of IHT's IP and property inventory.  (Doc. # 36.)

Mack filed an answer and asserted counterclaims against Harris and three Counter-Defendants—K-Armor Florida, LLC; Angel 7 Industries, LLC; and A7 Helmet Systems, LLC ("Counter-Defendants")—all allegedly alter-ego companies owned by Harris. (Doc. # 38.)  Mack's counterclaims alleged (1) that Harris breached his fiduciary duty when he was the majority shareholder of IHT, (2) that Harris had fraudulently transferred assets to Counter-Defendants, and (3) that Harris had converted property inventory and funds from IHT accounts.  (Id. at 13–15.)  In their respective answers, Harris and Mack asserted affirmative defenses

---

[1]For clarity, the remainder of this Order will refer to Plaintiffs collectively as

to the allegations against them.  (Docs. ## 17, 38.)

III.      The Motions for Summary Judgment

      Harris, Mack, and Counter-Defendant A7 Helmet Systems, LLC ("A7")

have all filed one or more motions for summary judgment in this case.  Mack seeks

summary judgment on Harris's claims (doc. # 68) and on Harris's affirmative

defenses to Mack's counterclaims (doc. # 67).  Harris seeks partial summary

judgment on his breach of fiduciary claim against Mack and on Mack's affirmative

defenses (doc. # 69); he also seeks summary judgment on Mack's counterclaims

(doc. # 70).  Likewise, A7 seeks summary judgment on Mack's counterclaims

(doc. # 71).

IV.      Referral to a United States Magistrate Judge

      On July 13, 2012, pursuant to Rule CV–72 of the Local Rules of the

Western District of Texas and 28 U.S.C. § 636(b), the Court referred this cause to

United States Magistrate Judge Bemporad for disposition of all pretrial matters.

(Doc. # 74.)  Where the Magistrate Judge's authority to make rulings is limited by

statute, such as with the instant motions for summary judgment, the Court

requested a recommendation to this Court in lieu of an order.  (Id.)  On December

5, 2012, the Magistrate Judge issued five Reports and Recommendations

---

"Harris" and to Defendants collectively as "Mack."

(docs. ## 78–82) addressing the parties' various motions for summary judgment (docs. ## 67–71).  The parties did not object to the Magistrate Judge's recommendations.

STANDARD OF REVIEW

I.        Review of a Magistrate Judge's Report and Recommendation

        The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served with a copy of the Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 n. 8 (5th Cir. 1982), overruled on other grounds by Douglass v. United States Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)).

        Findings to which no specific objections are made do not require de

6

novo review; the Court need only determine whether the Report and

Recommendation is clearly erroneous or contrary to law.  United States v. Wilson,

864 F.2d 1219, 1221 (5th Cir. 1989).  In this case, no objections to any of the

Reports and Recommendations were filed, so the Court reviews them for clear

error.

II.        Summary Judgment Standard

Summary judgment is proper when the evidence shows "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A dispute concerning a material fact is

"genuine," and therefore sufficient to overcome a motion for summary judgment,

"if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although the evidence is viewed in the light most favorable to the nonmoving

party, a nonmovant may not rely on "conclusory allegations, unsubstantiated

assertions, or only a scintilla of evidence" to create a genuine issue of material fact

sufficient to survive summary judgment.  Freeman v. Tex. Dep't of Criminal

Justice, 369 F.3d 854, 860 (5th Cir. 2004).

<u>DISCUSSION</u>

I.        <u>Defendants' Motion for Summary Judgment on Plaintiffs' Causes of</u>

          <u>Action</u>

          Mack's motion for summary judgment presents three categories of

arguments: (1) arguments that Harris lacks standing to bring claims against Mack,

(2) arguments that Harris has not presented sufficient evidence to raise a genuine

dispute as to his fraud claim, and (3) arguments that Harris has not presented

sufficient evidence to raise a genuine dispute as to his other claims.

          A.  <u>Standing</u>

          Mack contends, first, that Harris has no standing to sue derivatively on

behalf of IHT because he is not an actual shareholder of IHT; and second, that

Harris, even if he is a shareholder, has no standing to challenge Mack's assignment

of the IP from IHT to Shabaka because IHT did not own the IP after the post-

judgment transfer.  (Doc. # 68 at 5.)  The Magistrate Judge recommends denying

summary judgment on these arguments because questions of fact exist.  (Doc. # 78

at 6.)  The Court agrees with this recommendation.

          While Mack contends that Harris "failed to pay for his IHT shares" and

that Harris therefore "did not take the steps necessary to become an IHT

shareholder" (doc. # 68 at 3), Harris responds that, as Mack previously admitted,

Harris founded IHT and had sole discretion to issue shares to himself (doc. # 73 at 6).  Harris also produced prior testimony from Mack admitting that Harris previously had a 52.9% ownership interest in IHT.  (Doc. # 73.)  Finally, the state court judgment is premised on Harris's authority to transfer shares of IHT stock. (See doc. # 73, Ex. A at 3 (ordering "Defendant Kerry to transfer, convey and assign 62,500 of his own IHT Technology, Inc. Shares to Plaintiff").)  It was not clear error for the Magistrate Judge to conclude that this evidence was sufficient to preclude summary judgment on Mack's first standing claim.

Mack also contends that Harris has no standing to complain about Mack's assignment of the IP from IHT to Shabaka because IHT did not own the IP after the post-judgment transfer.  Instead, contends Mack, IHT "simply acted as a conduit to effectuate the transfer of the Property in the satisfaction of Mr. Mack's judgment."  (Doc. # 68 at 9–10.)  As the Magistrate Judge noted, however, Mack has not produced any evidence to support his claim that IHT did not own and had no rights to the IP once Harris reassigned it to IHT.  The state court judgment ordered Harris to "execute any and all legal transfers of that intellectual property to IHT Technology, Inc. as may be necessary to effectuate this judgment." (Doc. # 73, Ex. A, at 3.)  The state court judgment did not require that the IP be transferred to Mack. (See id.)  In light of this evidence, it was not clear error for

9

the Magistrate Judge to conclude that there is a genuine dispute concerning IHT's rights, if any, to the aforementioned IP and that this dispute precludes entry of summary judgment on Mack's second standing claim.

B.  Fraud

Harris alleges that Mack fraudulently concealed his plans to transfer the IP from IHT to Shabaka following the state court judgment.  (Doc. # 36 at 6–8.) According to Harris, Mack concealed these plans because he knew that Harris would file a motion to enjoin the reassignment of the IP, and this constituted fraud by nondisclosure.  (Id.)

The elements of fraud are that (1) a material representation was made; (2) the representation was false; (3) the speaker either knew the representation was false or made it recklessly without any knowledge of its truth and as a positive assertion at the time the representation was made; (4) the speaker made the representation intending the other party to act upon it; (5) the party thereby suffered injury.  Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America, 341 S.W.3d 323, 337 (Tex. 2011).  In a claim for fraud by nondisclosure, "[t]he first requirement of this test can be met if the defendant concealed or failed to disclose a material fact when a duty to disclose [the fact] existed."  United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 566 (5th Cir. 2005).

The Magistrate Judge recommends granting summary judgment in favor of Mack on this claim because the facts Harris alleges do not constitute fraud.  The Magistrate Judge found that Mack, as a majority shareholder, owed no duty to Harris, a minority shareholder; his only duty was to IHT.  (See doc. # 78 at 7.)  Moreover, even if Mack's duty to IHT included a duty to disclose his "plan" to reassign the IP from IHT to Shabaka, the Magistrate Judge found that Harris had not produced evidence that he or IHT relied on Mack's non-disclosure to their injury.  (Id. at 8.)  Harris was required to comply with the state court judgment regardless of his understanding of Mack's plans for the IP.  United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947) ("[W]e find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").  The Court adopts the Magistrate Judge's recommendation, because it is neither clearly erroneous nor contrary to law.  Mack's motion for summary judgment on Harris's fraud claim is granted.

      C.  Breach of Fiduciary Duty, Shareholder Oppression, Conversion

As the Magistrate Judge correctly concluded, Harris's remaining claims for breach of fiduciary duty, shareholder oppression, and conversion all center around the same issue: Mack's valuation of the assets he transferred and reassigned

from IHT to his separate companies, Ankole and Shabaka.  (See doc. # 36.)  Harris

contends that Mack's conveyance of these assets went beyond satisfaction of the

state court judgment because the IP and property inventory were worth far more

than Mack's appraisal of them.  (Id.)  Mack asserts that he properly valued the

assets before transferring them in partial satisfaction of the state court judgment.

(Doc. # 68 at 12.)  The Magistrate Judge concluded that Harris had produced

sufficient evidence to overcome summary judgment on these claims; the Court

adopts this conclusion because it is not clearly erroneous or contrary to law.

First, the Magistrate Judge concluded that there was a genuine factual

dispute as to whether Mack properly valued IHT's IP and property inventory when

he used it to offset the state court judgment.  (Doc. # 78 at 10.)  The Magistrate

Judge based this conclusion in large part on Mack's own inconsistent statements.

(Id.)  For example, while Mack valued the IP at $300,000.00, contending that he

arrived at this amount by examining Harris's own sales of equity interest in the

corporation that held the IP prior to its assignment to IHT (doc. # 68-1, Ex. I, at

275–76), Harris produced deposition and prior state court trial testimony in which

Mack stated that the IP has a potential value of multiple millions of dollars

(doc. # 73, Ex. A, at 313–14, 316; Ex. F at 3–5; Ex. G at 105–10).  Moreover,

Mack admits that he did not get a professional and independent appraiser to value

the IP.  (Id. Ex. A at 275–76.)  Similarly, while he now contends that the value of

IHT's motorcycle helmets is just $31.00 each, Mack himself stated that the helmets

retail from $149.00 to $399.00 per helmet and that Ankole had already sold

approximately 500 to 600 of the 4,000 helmets transferred from IHT.

(Doc. # 73-1, Ex. A at 202.)  At retail prices, therefore, the value of the inventory

is between $596,000.00 and $1,596,000.00.  In light of these facts, it was not clear

error for the Magistrate Judge to conclude that there is a genuine dispute as to the

value of IHT's inventory property and IP.  Moreover, because Mack's valuation of

IHT's assets prior to their transfer is the central issue in Harris's claims for breach

of fiduciary duty, shareholder oppression, and conversion, it was not clear error for

the Magistrate Judge to conclude that summary judgment should be denied with

respect to those claims.

        The Magistrate Judge concluded, however, that Harris's claims

regarding Mack's alleged breach of fiduciary duty should be dismissed.  (Doc. # 78

at 11.)  First, Harris argues that Mack breached his fiduciary duty under Article

5.10(A) of the Texas Business Corporation Act. This argument must fail, because

Article 5.10(A) expired on January 1, 2010, months before Mack became majority

shareholder of IHT.  See Tex. Bus. Corp. Act. art. 5.10(A) (expired Jan. 1, 2010).

Second, Harris may only bring the breach of fiduciary duty claim derivatively on

behalf of IHT, not individually, since shareholders owe no duty to each other absent a special relationship.  See, e.g., Allen v. Devon Energy Holdings, LLC, 367 S.W.3d  355, 389 (Tex. App.—Houston 2012) ("Texas law does not recognize a general fiduciary duty between majority and minority shareholders in a closely-held corporation.").  Accordingly, the Court adopts the Magistrate Judge's recommendation and grants summary judgment in favor of Mack on Harris's fiduciary duty claims.

II.        Plaintiffs' Motion for Partial Summary Judgment Against Mack

The Magistrate Judge's second Report and Recommendation (doc. # 79) addresses Plaintiffs' motion for partial summary judgment against Mack (doc. # 69).  Harris seeks a ruling as a matter of law that Mack breached his fiduciary duty to IHT and summary judgment on Mack's affirmative defenses.

A.  Harris's Breach of Fiduciary Duty Claim

For the reasons given in Part I.C., supra, it was not clearly erroneous for the Magistrate Judge to conclude that there was a genuine factual dispute as to whether Mack properly valued IHT's IP and property inventory when he used it to offset the state court judgment.  Because Harris's breach of fiduciary duty claim turns on the valuation of IHT's property inventory and IP, and because there is conflicting evidence on this issue, the Court adopts the Magistrate Judge's

14

conclusion that summary judgment on this claim is inappropriate.

        B. <u>Mack's Affirmative Defenses</u>

        Mack asserts the following defenses to Harris's claims: (1) estoppel, unclean hands, and contributory negligence; (2) fraud; (3) res judicata, collateral estoppel, and impermissible collateral attack; (4) offset; (5) capacity; (6) business judgment rule; (7) illegality; (8) standing; and (9) failure of consideration.  The Magistrate Judge recommended that summary judgment be granted on the affirmative defenses of estoppel and contributory negligence, as Mack failed to provide any evidence of them; the Court adopts this recommendation.  The remaining defenses are addressed below.

        1. <u>Unclean Hands</u>

        Mack asserts the affirmative defense of unclean hands "to call attention to Harris'[s] own misconduct, which effectively destroyed IHT's business and bars Harris from recovering on any derivative claims."  (Doc. # 75 at 3.)  As evidence of Harris's alleged misconduct, Mack claims that "Harris left a trail of unpaid bills, default judgments, and missing Inventory in his wake"; and that "IHT was not selling any helmets, was months behind on its rent, and could not make payroll."  (<u>Id.</u>)

        The defense of unclean hands requires a defendant to "show that he

15

has been personally injured by the plaintiff's conduct."  Mitchell Bros. Film Group

v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir. 1979).  The doctrine of

unclean hands applies when a party seeking relief has committed an

unconscionable act immediately related to the equity the party seeks with respect

to the litigation.  Id.  The Magistrate Judge concluded that Mack has produced

sufficient evidence to overcome Harris's motion for summary judgment on this

defense, basing that conclusion on Harris's admissions that IHT's business

operations were in disarray after the state court judgment, leaving Mack with a

near inoperable company; that, "[a]t the time of [Mack's] transfer of the helmets in

partial satisfaction of the judgment, [IHT was] behind on its rent"; that IHT

"wasn't selling any product"; and that IHT was having trouble paying its

employees.  (Doc. # 75-2, Ex. G, at 129–30, 132–33.)  The Magistrate Judge

concluded that Mack had shown that, at the time of the transfer, IHT's assets and

shareholdings were already in a state of damage, injuring Mack as the succeeding

majority shareholder of IHT.  (Doc. # 79 at 9.)  Moreover, the Magistrate Judge

found that Mack had shown a sufficient connection between Harris's conduct in

diminishing IHT operations when he was the majority shareholder and Mack's

conduct in transferring the majority of the remaining IHT assets in order to

partially fulfill the state court judgment.  (Id.)  Based on the available evidence,

this conclusion is neither clearly erroneous nor contrary to law.  Thus the Court

adopts the Magistrate Judge's recommendation that Harris's motion for summary

judgment on the affirmative defense of unclean hands be denied.

2.  Fraud

Mack complains that Harris "enriched himself through fraudulent

'loan' agreements with IHT," barring Harris's own claims against Mack.

(Doc. # 75 at 14.)  Mack raises fraud both as an affirmative defense and as a

separate counterclaim for fraudulent transfer.  At his deposition, Mack testified that

when he became the majority shareholder of IHT, he acquired information from a

file indicating that Harris transferred funds to an alter ego company and that Harris

caused IHT to "reimburse" expenses to another of Harris's alter ego companies for

"sales."  (Doc. # 76-2, Ex. G., at 44–54.)  Mack claims that the information in the

file indicates that these "sales" never took place and that the "reimbursement" was

actually a disguised fraudulent transfer to Harris himself.  (Id.)  The Magistrate

Judge concluded that Mack's testimony was sufficient to raise a genuine dispute

regarding the affirmative defense of fraud and recommended denying summary

judgment.  Because this recommendation is not clearly erroneous or contrary to

law, the Court adopts it and denies summary judgment on the affirmative defense

of fraud.

3. <u>Res judicata, collateral estoppel, impermissible collateral
attack, business judgment rule, and illegality</u>

Mack responds to Harris's claims for fraud with the affirmative
defenses of res judicata, collateral estoppel, impermissible collateral attack, the
business judgment rule, and illegality.  (Doc. # 12 at 5–7.)  Because, as described
above (<u>see</u> <u>supra</u> at 10), this Court adopts the Magistrate Judge's recommendation
to grant summary judgment in favor of Mack on Harris's fraud claim, these
defenses are moot; Harris's motion for summary judgment regarding them is also
denied as moot.

4. <u>Offset</u>

Mack also asserts the affirmative defense of offset, arguing that "[a]ny
damages Harris might be entitled to recover are offset by the unpaid Judgment
against him."  (Doc. # 38 at 7; doc. # 75 at 14.)  The Magistrate Judge recommends
granting Harris summary judgment on this affirmative defense, since Mack has
provided no factual support for it.  (Doc. # 79.)  Although the state court judgment
required Harris to cede his controlling interest in IHT to Mack and to assign his IP
to IHT, it ordered that Mack "take nothing" from Harris in his individual capacity.
(Doc. # 68-1 at 4.)  The Magistrate Judge found that there was not sufficient
evidence that Harris was personally liable for any damages above and beyond the

terms of the state court judgment.  Because that conclusion is not clearly erroneous or contrary to law, the Court adopts the Magistrate Judge's recommendation and grants summary judgment in favor of Harris on this affirmative defense.

### 5. Standing

Mack acknowledges that standing is not a traditional affirmative defense, but he pleads it "in an abundance of caution."  (Doc. # 30 at 8 n. 1.)  For the reasons already given (see supra at 7–8), the Court has concluded that Harris has presented sufficient evidence of standing to move forward with his claims. Accordingly, the Court, finding that it is neither clearly erroneous nor contrary to law, adopts the Magistrate Judge's recommendation to grant summary judgment against Mack on the issue of standing. (Doc. # 79 at 12.)

### 6. Failure of Consideration

Mack asserts that the affirmative defense of failure of consideration is appropriate because "Harris never contributed any IP to IHT in return for his shareholdings and never paid IHT any monetary consideration for his share[s]." (Doc. # 38 at 8.)  For the reasons given above (see supra at 8), the Magistrate Judge found that Mack has failed to raise a material dispute over whether Harris was a legitimate shareholder of IHT.  Accordingly, the Court adopts the Magistrate Judge's recommendation to grant summary judgment in favor of Harris on this

affirmative defense.  (Doc. # 79 at 12.)

III.         Plaintiffs' Motion for Summary Judgment on Counterclaims

         The Magistrate Judge's third Report and Recommendation addresses
the Plaintiffs' Motion for Summary Judgment on Counterclaims.  (Doc. # 70.)
Harris moves for summary judgment on Mack's counterclaims for breach of
fiduciary duty, fraudulent transfer, and conversion.  (Id.)  These counterclaims
relate to Harris's alleged asset transfers and self-dealing before the state court
judgment and to his conduct following the state court judgment but before he
complied with it.  Mack contends that Harris breached his fiduciary duty to IHT as
its controlling shareholder and chairman of its board.  Mack also alleges that Harris
fraudulently transferred IHT assets through a series of self-dealing transactions
from 2006 through 2010.  (Doc. # 76 at 8–9; doc. # at 38 at 10–11.)  For the
reasons that follow, and in light of the fact that neither party objected to the Report
and Recommendation, the Court adopts the Magistrate Judge's recommendations
to grant in part and deny in part Plaintiffs' motion.

         A.  Harris's Affirmative Defenses

             1.  Statute of Limitations

         Mack filed his counterclaims on October 26, 2011.  (Doc. # 12.)  The
statute of limitations for fraud and breach of fiduciary duty claims is four years.

Tex. Civ. Prac. Rem. Code. 16.004(a)(4)–5 (West 2002); <u>Martinez Tapia v. Chase</u>

<u>Manhattan Bank, N.A.</u>, 149 F.3d 404, 410 (5th Cir. 1998).  Accordingly, Mack's

causes of action brought under these theories must have accrued after October 26,

2007.  A suit for conversion must be brought no later than two years after the day

the cause of action accrues.  Tex. Civ. Prac. Rem. Code § 16.003(a); <u>Am. Int'l</u>

<u>Specialty Lines Ins. Co. v. Rentech Steel LLC</u>, 620 F.3d 558, 565 (5th Cir. 2010).

Accordingly, Mack's claims for conversion must have accrued after October 26,

2009.

   The Magistrate Judge found that many of Mack's counterclaims were

based on transactions that occurred before the 2007 and 2009 accrual dates.

Addressing Mack's argument that two exceptions to the accrual rule apply to this

case—the discovery rule and fraudulent concealment—the Magistrate Judge found

that neither was applicable.  First, the Magistrate Judge concluded that Mack, who

had previously brought a state court action against Harris for wrongful conduct—

including wrongful transfers—had access to documents during discovery that

should have alerted him to the possibility of fraudulent transfers by Harris.

(Doc. # 80 at 10.)  Because Mack could have inquired into the legitimacy of the

relevant transactions at that time, the Magistrate Judge concluded that the

discovery rule was not applicable to toll the statute of limitations.  (<u>Id.</u>)

Similarly, the Magistrate Judge found that fraudulent concealment was inapplicable because Mack could not demonstrate a reasonable reliance on Harris's "lies or wrongful silence" given the nature of the state court lawsuit. "The prior litigation," concluded the Magistrate, "should have made Mack aware of the danger of relying on Harris's conduct and representations." (Id.)

Accordingly, the Magistrate Judge concluded that those causes of action accruing outside the relevant limitations periods were time-barred. Considering the available evidence, the Court finds that the Magistrate Judge's recommendation is neither clearly erroneous nor contrary to law and adopts it in full. Similarly, the Court adopts the Magistrate Judge's conclusion that Mack's claims for conversion of the IP and helmets/visors, which accrued after the state court judgment, are not barred by the statute of limitations. (Id. at 11.)

## 2. Res Judicata

Harris contends that all of Mack's counterclaims for breach of fiduciary duty, fraudulent transfer, and conversion that pre-date entry of the final state court judgment on March 11, 2010, should have been brought in the state action and are therefore barred by res judicata. (Doc. # 70 at 13, 16.) Mack responds that many of his counterclaims involve Harris's actions after the entry of the judgment and are based on violations of the state permanent injunction.

(Doc. # 76 at 6–7.)  It is undisputed (1) that the parties in the state court case were identical to the parties in the current litigation; (2) that the state court had jurisdiction over the parties; and (3) that the state court issued a final judgment. The Magistrate Judge then turned to the fourth and final requirement for the res judicata test: whether the same cause of action was brought or could have been brought in the prior proceeding.  Finding, again, that Mack had access to IHT's books and other financial documents during the prior litigation, the Magistrate Judge found that Mack could have, with reasonable diligence, discovered the allegedly fraudulent transfers and conversions prior to or during the state court litigation.  Accordingly, the Magistrate Judge recommended that Harris's motion for summary judgment on his affirmative defense of res judicata be granted, except for those of Mack's counterclaims which arise from transactions occurring <u>after</u> the state court litigation.  (Doc. # 80 at 14.)  The Court, finding that this recommendation is neither clearly erroneous nor contrary to law, adopts it in full.

    B.  <u>Mack's Remaining Counterclaims</u>

       1.  <u>Fraudulent Transfer</u>

    Mack brings a claim for fraudulent transfer under the Uniform Fraudulent Transfer Act ("TUFTA").  Tex. Bus. & Comm. Code. Ann. § 24.005(a) (West 2009).  Under TUFTA, a transfer is fraudulent as to a creditor whose claim

23

arose before the transfer was made if (1) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and (2) the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer.  Id.  Mack testified in his deposition that Harris fraudulently transferred IHT assets to avoid paying the judgment to Mack.  Mack points to files indicating that, after the state court judgment, Harris transferred funds to his alter ego company and caused IHT to "reimburse" expenses to another of his alter ego companies for "sales."  (Doc. # 76-2, Ex. G, at 44–54.)  Mack further alleges that the file he discovered indicates that these "sales" never took place and that the "reimbursement" was a fraudulent transfer to Harris himself.  The Magistrate Judge, considering this evidence, found that Mack had raised genuine issues of material fact on his post-judgment fraudulent transfer claims.  (Doc. # 80 at 16.)  The Court agrees and denies Plaintiffs' motion for summary judgment against Mack on his fraudulent transfer counterclaims.

2.  Conversion

Mack alleges that Harris wrongfully converted IHT assets, inventory, and IP after the state court judgment.  To sustain his conversion counterclaims, the elements that Mack must prove are that (1) he owned, had legal possession of, or was entitled to possession of certain property; (2) Harris assumed and exercised

24

dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Mack's rights; and (3) Harris refused Mack's demand for return of the property.  See Hunt v. Baldwin, 68 S.W.3d 117, 131 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

The Magistrate Judge concluded that, based on the same evidence for the fraudulent transfer claim discussed above, Mack has produced sufficient evidence to raise a factual issue for his conversion claim pertaining to the asset transfer that occurred after the state court judgment.  (Doc. # 80 at 16.)  Moreover, the Magistrate Judge concluded that genuine disputes of material fact exist regarding Mack's inventory and IP claims.  (Id.)

With regard to IHT inventory, Mack alleges that Harris continued selling helmets through one of his alter-ego companies in violation of the state court judgment enjoining him from doing so.  (Doc. # 76 at 9.)  Additionally, Mack contends that after he took control of IHT he found that Harris had secretly removed hundreds of IHT helmets.  (Id.)  With regard to IHT's IP, Mack contends that Harris admitted in his deposition "that IHT's patented integrated power system laid the 'foundation' for helmet technology Harris now develops through his competing company."  (Doc. # 76 at 9; doc. # 70-1, Ex. H, at 211–13.)

Harris admits that the helmets were removed from the IHT

25

warehouse but asserts that this "was almost immediately caught as a mistake on the webmaster's part and corrected." (Doc. # 70-1, Ex. I at 30.) He claims that his new patent applications do not overlap, infringe, or illegally interfere with IHT's intellectual property. (Doc. # 70 at 7.) The Magistrate Judge concluded that Harris has not demonstrated that there is no genuine material dispute as to the merits of Mack's remaining counterclaims and recommended that summary judgment be denied. Because this recommendation is neither clearly erroneous nor contrary to law, the Court adopts it in full and denies summary judgment as to these counterclaims.

IV.      Defendants' Motion for Summary Judgment on Plaintiffs' Affirmative Defenses to Defendants' Counterclaims

The Magistrate Judge's fourth Report and Recommendation (doc. # 81) addressed the Defendants' Motion for Summary Judgment on Plaintiffs' Affirmative Defenses to Defendants' Counterclaims (doc. # 67). Harris asserts the following affirmative defenses to Mack's counterclaims: (1) unclean hands; (2) accord, satisfaction, payment, and novation; (3) res judicata; (4) statute of limitations; (5) offset; and (6) contribution. (Doc. # 17.) For the reasons that follow, the Court adopts the Magistrate Judge's recommendation that summary judgment be granted in part and denied in part.

A. <u>Unclean Hands</u>

The doctrine of unclean hands applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." <u>Petro Franchise Sys., LLC v. All Am. Props., Inc.</u>, 607 F. Supp. 2d 781, 799 (W.D. Tex. 2009). Harris contends that Mack's conduct in "stripping IHT of all of its assets, diverting opportunities away from IHT to his own benefit and use, and ceasing IHT operations, destroyed IHT's potential for profitability." (Doc. # 17 at 4.) The Magistrate Judge concluded that there are "genuine disputes of material fact as to whether these contentions directly related to Mack's counterclaims of conversion and fraudulent transfer arising after the state court judgment in March 2010." (Doc. # 81 at 6.) Because Mack failed to show, as a matter of law, that the relationship between his claims and Harris's defense is not "immediate, necessary, or direct," or that it fails to "relate to the controversy in question," <u>Petro Franchise Sys.</u>, 607 F. Supp. 2d at 799, the Magistrate Judge Recommended denying summary judgment. Finding that this recommendation is neither clearly erroneous nor contrary to law, the Court hereby adopts it in full and denies summary judgment on Harris's affirmative defense of unclean hands.

B.  Res Judicata

For the reasons given above, the Court has adopted the Magistrate Judge's recommendation to grant Harris's motion for summary judgment on his res judicata defense.  Accordingly, Mack's motion for summary judgment on this affirmative defense is denied.

C.  Statute of Limitations

For the reasons given above, the Court has adopted the Magistrate Judge's recommendation to grant Harris's motion for summary judgment with regard to counterclaims that Mack did not bring within the applicable limitations period.  Accordingly, the Court also adopts the Magistrate Judge's recommendation to deny summary judgment to Mack on Harris's affirmative defense invoking the relevant statutes of limitations.

D.  Offset and Contribution

Harris contends that Mack's ultimate recovery against him should be offset by the value of any recovery he receives from Mack regarding his claim that Mack undervalued the IHT IP and inventory that Mack transferred to Shabaka and Ankole.   (Doc. # 17 at 6.)  The Magistrate Judge concluded that, for many of the reasons already given, Harris had raised a material factual dispute as to whether Mack adequately valued the IP and inventory before transferring the assets in

partial satisfaction of the state court judgment.  (Doc. # 81 at 8.)  The Magistrate

Judge recommended denying summary judgment on the affirmative defense of

offset with regard to the valuation of  IHT assets.  (Id.)  The Court adopts this

recommendation, as it is neither clearly erroneous nor contrary to law.

    Harris also claims that he has a right to contribution from Mack

based on amounts he paid for an IHT employee's unpaid wages and based on

another lawsuit for IHT's default of a loan.  (Doc. # 72 at 13.)  The Magistrate

Judge found that Harris had failed to produce any evidence that he paid a

proportionate share of either the unpaid wage claim or the bank default judgment,

precluding him from invoking the affirmative defense of contribution for those

liabilities.  (Doc. # 81 at 9.)  Accordingly, the Magistrate Judge recommended

granting summary judgment against Harris on this affirmative defense.  (Id.)  The

Court, finding this recommendation neither clearly erroneous nor contrary to law,

adopts it in full.

V.   Counter-Defendant A7 Helmet Systems, LLC's Motion for Summary
    Judgment on Counterclaims

    The Magistrate Judge's final Report and Recommendation

(doc. # 82) addressed Counter Defendant A7 Helmet Systems, LLC's Motion for

Summary Judgment on Counterclaims (doc. # 71).  A7 seeks summary judgment

on Mack's alter-ego and misappropriation claims against it.  For the reasons that follow, the Court adopts the Magistrate Judge's recommendation that A7's motion be denied.

Mack claims that A7, along with several other companies, are Harris's alter egos that Harris established "as a means of evading existing legal obligations, including but not limited to [the] permanent injunction against him" that Mack obtained in the previous state litigation.  (Doc. # 38 at 17.)  Mack therefore seeks to hold Harris himself personally liable for Mack's claims against A7 and the other defendants, arguing that "holding only the entities liable would result in injustice, as the entities have been operated as a sham to perpetuate a fraud."  (Id.)

A7 contends there is no evidence to support the claim that it is an alter ego of Harris or that A7 has ever sold any type of helmet belonging to IHT. (Doc. # 71 at 2–3.)  A7 claims that Harris is neither a member nor a manager of A7 (id. at 3); that it has no connection to the motorcycle helmet industry (id.); and that Mack has failed to allege that the traditional factors for an alter-ego determination are present with regard to A7 (id.).

Finding that A7 was incorporated in Illinois, the Magistrate Judge applied Illinois law to Mack's alter-ego, or veil-piercing, claim.  (Doc. # 82 at 6.)

Under Illinois law, a corporation's separate identity will be disregarded and the

veil of limited liability will be pierced when there is "such unity of interest and

ownership that the separate personalities of the corporation and the individual no

longer exist."  <u>Van Dorn Co. v. Future Chem. & Oil Corp.</u>, 753 F.2d 565, 569 (7th

Cir. 1985).  Considering the factors to which Illinois courts look when making an

alter-ego determination (e.g., inadequate capitalization, failure to observe corporate

formalities, and commingling of funds), the Magistrate Judge concluded that Mack

has produced sufficient evidence to raise a genuine factual dispute as to whether

A7 is Harris's alter-ego company.  (Doc. # 82 at 7.)  The Magistrate Judge noted,

for example, that the operating agreement of A7 lists Harris as a member (<u>id.</u>; doc.

# 77-1, Ex. C, at 9); that Mack had produced a loan document signed by Harris that

named him as "Manager" of A7 (doc. # 77-1, Ex. C); that Harris formed A7 on

June 2, 2010—shortly before Harris transferred his controlling interest in IHT to

Mack (<u>id.</u>, Ex. C); that Harris installed as the founding majority member of A7

another counter-defendant in this case, Angel 7 Industries, LLC (<u>id.</u>, Ex. C, at 9;

Ex. A; Ex. D at 4); and that the sole member and manager of Angel 7 is Harris's

wife (<u>id.</u>, Ex. B).  Additionally, the Magistrate Judge found that Angel 7's unclear

corporate status (it was originally formed in Nevada but then dissolved and re-

formed in Texas under the same name, yet neither corporation has any corporate

documents evidencing such a transformation) and its questionable cash management structure (which made funds A7 paid to Angel 7 untraceable) further support Mack's claim.  (Doc. # 82 at 7–8.)

Finally, Mack produced evidence showing a direct connection between Harris and A7 that arose in conjunction with Mack's claims in this case: Harris made a public statement that the IP Harris developed for IHT laid the foundation for the helmet technology Harris now develops through A7.  (Doc. # 77 at 4.)  In light of this and other evidence, the Magistrate Judge concluded that Mack had raised genuine issues of material fact as to whether A7 is in fact an alter ego of Harris and whether A7 misappropriated IHT assets.  (Doc. # 82 at 8.) Accordingly, the Magistrate Judge recommended denying A7's motion for summary judgment on Mack's claims against it.  (Id.)  The Court adopts this recommendation, finding that it is neither clearly erroneous nor contrary to law.

<u>CONCLUSION</u>

After reviewing the record, the Court concludes that the Magistrate Judge's Reports and Recommendations, to which neither party has objected, are neither clearly erroneous nor contrary to law.  Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendations in full.  As described above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for

Summary Judgment on Plaintiffs' Causes of Action (doc. # 68); **DENIES IN PART, DENIES AS MOOT IN PART**, and **GRANTS IN PART** Plaintiffs' Motion for Partial Summary Judgment Against Mack (doc. # 69); **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Summary Judgment on Counterclaims (doc. # 70); **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment on Plaintiffs' Affirmative Defenses to Defendants' Counterclaims (doc. # 67); and **DENIES** Counter-Defendant A7 Helmet Systems, LLC's Motion for Summary Judgment on Counterclaims (doc. # 71).

IT IS SO ORDERED.

DATED:  San Antonio, Texas, January 31, 2013.

_____
David Alan Ezra
Senior United States District Judge